# CHARLESTON.

## BANK OF GASSAWAY *v.* A. C. JAMES

### (No. 6211)

Submitted April 10, 1928.　　Decided April 17, 1928.

1. APPEAL AND ERROR—*Identification by Judge of Evidence Printed in Record as That Produced at Trial Held Sufficient Regardless of Discrepancy With Order.*

    Where the evidence is not incorporated in the body of a bill of exceptions but is referred to in the order as attached to the bill marked "transcript of evidence", signed by the judge, and that it contains all the evidence adduced in the trial, and it appears that the evidence printed in the record is identified by the signature of the judge as a part of the bill of exceptions, giving the style, character, date and court in which such evidence was taken, but designated it as "transcript of testimony," the discrepancy between the order and evidence so certified is not material, and the identification is sufficient to make the evidence printed in the record as that which was adduced on the trial. (p. 437.)

    (Appeal and Error, 4 C. J. § 2173.)

2. ALTERATION OF INSTRUMENTS—*Maker's Alteration of Renewal of Note After Maturity, Not Prejudicing Endorser or Co-maker, Does Not Discharge Original Obligation, on Which Payee May Recover.*

    Where there has been an alteration of a renewal of a negotiable promissory note after maturity by one of the makers, which alteration does not materially prejudice the

rights of a co-maker, or endorser thereon, the original obligation is not discharged, and the payee may recover.   (p. 438.)

(Alteration of Instruments, 2 C. J. § 33.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Braxton County.

Action by the Bank of Gassaway against A. C. James. Judgment for defendant, and plaintiff brings error.

> *Judgment reversed; verdict set aside; new trial awarded.*

*Haymond & Fox,* for plaintiff in error.

*Van B. Hall* and *G. C. Belknap,* for defendant in error.

LIVELY, JUDGE:

The plaintiff, Bank of Gassaway, obtained this writ to a judgment entered upon a verdict in defendant James' favor in an action of debt on a $1500.00 note.

On October 1, 1922, defendant James and Archa Singleton executed their joint note for $1500.00 to the plaintiff bank, payable four months after date. Archa Singleton died, testate, in December, 1922. In 1923, upon maturity of this $1500.00 note, his executors, J. B. Fisher and Belle Singleton (wife of the deceased), acting under authority conferred by the decedent's will, executed, together with defendant James, a renewal note in place of that dated October 1, 1922, the executors signing the instrument in their representative capacity. Similar renewals were made until June 1, 1926, when the last renewal note was executed. This note was similar to the prior ones with the exception that Belle Singleton failed to include the word "executrix" after her name, and James, who had signed the previous renewals as maker, signed his name on the back of this one. James claimed that his liability on the original note was that of surety. His testimony was objected to as incompetent against the estate, but the court permitted it to go to the jury.

After the note of June 1, 1926, became due, Mrs. Singleton having been advised by her uncle that as she had signed the instrument in her representative capacity she should have included the word "executrix" after her name, went to the

bank, the holder of the note, and was granted permission to make this change. The defendant stated he had no knowledge of this action, and that when he had indorsed the note it had been signed by Mrs. Singleton individually. The interest on the various renewal notes was paid by the estate of Archa Singleton, deceased.

In May, 1927, the plaintiff bank instituted this suit against defendant James on the note of October 1, 1922. The case was submitted to a jury with the result noted above.

Before passing upon the merits, it will be necessary to consider a preliminary question raised by counsel for the defendant. Counsel for James claims that the evidence is not made a part of the record by proper bill of exception. There is an order entered December 16, 1927, reciting that plaintiff excepted to certain rulings of the court in the trial and tendered its bills of exception Nos. 1 and 2 which were signed by the Judge and said bills made a part of the record. By order of December 21, 1927, it is recited that bill of exception No. 1 was signed, sealed and made a part of the record. There is a bill of exception signed by the Special Judge W. L. Armstrong which says that plaintiff moved the court to direct a verdict in its favor, which motion the court overruled, and then plaintiff tendered certain instructions, some of which were refused, others given as tendered, and one as modified by the court; and setting out those tendered, given, and refused on the part of defendant. There is another bill (and this is the one in question) which says that after the verdict plaintiff made a motion to set it aside for reasons therein stated, which motion the court overruled, to which plaintiff excepted, and then plaintiff asked that the evidence taken be certified and made a part of the record, and the court certified that the transcript of the evidence attached to the bill marked "Transcript of evidence" signed by W. L. Armstrong, Special Judge, was all the evidence taken at the trial, which was made a part of the bill of exception No. 2 which is signed, sealed and made a part of the record. Then follows, in the printed record, what purports to be all of the evidence certified by Raymond Allman, official reporter. The claim that the evidence is not properly made a part of the record is based

on the assertion that there is nothing in the printed record
which identifies the purported evidence therein copied as the
transcript which was attached to and made a part of bill No.
2 and which the court certified was all of the evidence intro-
duced on the trial. Tersely stated, the point is that the evi-
dence in the record is not identified as the evidence attached
to and made a part of bill No. 2. *Dudley* v. *Barrett,* 58 W.
Va. 235; *Parr* v. *Currence,* 58 W. Va. 523; *Coal & Coke* v.
*Joyce,* 58 W. Va. 544; *McKendree* v. *Shelton,* 51 W. Va.
516; and *Tracy's Adm.* v. *Coal Co.,* 57 W. Va. 587, are
relied upon to sustain the proposition that there was not
sufficient identification. By stipulation of counsel the orig-
inal transcript of the evidence is filed in this Court, together
with plaintiff's original bills of exception Nos. 1 and 2. On
the back of the original transcript of the evidence so filed
is the style of the case, the court wherein pending, the
term at which it was heard, and marked "Transcript of testi-
mony", Bill of Exception No. 2, followed by the signature
of "W. L. Armstrong, Special Judge." This original trans-
cript contains the same evidence as that printed in the record.
It will be noted that the only discrepancy between the order
and the above description of the paper is that the order says
"transcript of evidence", whereas the paper endorsed by the
Special Judge is "transcript of testimony". We think this
discrepancy is more of form than of substance. There can
be no doubt that the evidence so transcribed and identified
was before the Judge, and that it was made a part of the bill
of exception No. 2. A liberal construction is always given to
the court's orders and the record, in order to give a party his
exceptions. *Cecil* v. *Coal Co.,* 94 W. Va. 116, 120. All that
is required, where the paper is not incorporated in the body
of the bill of exception, is that it be annexed to the bill, or
marked by letter, number or other means of identification
mentioned in the bill, or described therein as to leave no
doubt, when found in the record, that it is the one referred
to in the bill of exception. *Dudley* v. *Barrett, supra.* We
think the identification is beyond doubt.

The defendant James takes the position that the alteration
of the June 1, 1926, renewal note was a material one changing

the legal effect of the instrument, and having been fraudulently made, the plaintiff was precluded from recovery on that note or the original (October 1, 1922) note.

Was the alleged alteration a material one? This is the controlling question presented upon this writ. It is quite clear from the evidence that the note of June 1, 1926, was given in renewal of the obligation represented by that dated October 1, 1922, and not in payment thereof, and that this fact was known by all the parties to the instrument. The prior renewals had been prepared by the cashier of the plaintiff bank. He testified that in their preparation he had at first drawn the renewals signed Estate of Archa Singleton by-------------------Executor and-------------------Executrix, and the signatures of himself and Mrs. Singleton were then written in the blank spaces; that subsequently he had prepared the renewals as made by-------------------Executor, and-------------------Executrix. The last renewal, but one, made February 1, 1926, and proven as a liability against Archa Singleton's estate, as hereinafter mentioned, was signed ''Estate of Archa Singleton, Belle Singleton, Es., J. B. Fisher, Ex., A. C. James''.

There is little or no evidence to justify the conclusion that the parties had decided to change the form of, or the relation of the parties to, the renewal notes. The whole history of the transaction is indicative of the fact that the same parties were intended to be primarily liable—the executors as representatives of the decedent's estate, acting in pursuance of authority directly conferred upon them—and the same party (defendant) was intended to be secondarily liable. The interest on the renewal notes was paid out of the estate of Archa Singleton, and the renewal note preceding that of June 1, 1926, was proved against his estate.

There is no evidence which would indicate that Belle Singleton agreed to individually assume the payment of the note, except the fact that on the last renewal note her name was signed without letters or words indicating her fiduciary relationship. The evidence of Fisher, her co-executor, is that no change was contemplated by the parties or agreed to by the holder of the original note. Fisher, as he had theretofore

done, signed as executor. If Belle Singleton had signed as an individual and not as executrix, the estate of Archa Singleton would not be bound, because the terms of the power grant- the executors under the will rendered it necessary that the power be jointly exercised. See footnote to section 1402, page 1433, Vol. 2, Shouler on Wills, Executors and Administrators (5th ed.). And consequently, one of the two executors had no power to charge the estate by signing the note for the estate, even though it was given in renewal of one signed by the testator in his lifetime. *Bailey* v. *Spofford,* 21 N. Y. Supr. 86. If a suit had been brought on the renewal note dated June 1, 1926, the makers having signed the instrument jointly, it would have been necessary to have declared against them jointly. In that action, if the suit was one between the original parties, it would have been competent for Fisher to have explained for what estate he was acting as executor. See *Huntington Finance Co.* v. *U. G. Young,* 142 S. E. 102, handed down contemporaneously with this opinion. And after this explanation was made, it would also have been competent to have shown that Belle Singleton was a co-executor with Fisher in the administration of Archa Singleton's estate, and that this note, in accordance with a long course of renewals, was given in renewal of the original obligation in the exercise of a power expressly conferred by the will of the decedent. *Peter* v. *Beverly,* 10 Pet. (U. S.) 532. "In accordance with the rules applicable to writings in general, it is permissible to show by parol or extrinsic evidence as between the original parties or those with notice, the true capacity or legal relation of the parties to a negotiable bill or note." Jones, Commentaries on Evidence, Vol. 4, (2nd ed.), sec. 1646, page 3019; *Clark* v. *Talbott,* 72 W. Va. 46. It will be observed that the note of June 1, 1926, was not an original undertaking, but was simply a renewal of a prior obligation entered into by the deceased Archa Singleton in his lifetime.

It being determined that the true relationship of Belle Singleton to the note of June 1, 1926, could be shown in an action thereon by the payee, it becomes apparent that the alteration which the evidence shows apparently was made by

her in good faith, was not a material one, and could in no way prejudice defendant James. Plaintiff could maintain its suit upon the renewal note, and show the true status of the parties by evidence. This conclusion is decisive of the present controversy. It may be noted that in 3 R. C. L., sec. 326, page 1112, it is said:. "The cases seem to be harmonious upon the proposition that where an alteration is made under an honest mistake of right, and not fraudulently and with a view to gain an improper advantage, a recovery may be had upon the original consideration of the instrument."

The court should have given the peremptory instruction requested by the plaintiff. The judgment will be reversed, the verdict set aside, and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*